UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE S. POLLACCIA,

           **Plaintiff,**         CIVIL ACTION NO. 09-cv-14438

    **vs.**

                         DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

           **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10, 14) be granted in part, Defendant's Motion For Summary Judgment (docket no. 13) be DENIED and the instant case REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)[1].

                               ***

**II.**    **PROCEDURAL HISTORY:**

      Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income with a protective filing date of January 8, 2007 alleging that she had been disabled since October 16, 2006 due to lupus, degenerative disc disease, neuropathy deep vein thrombosis, pernicious anemia, asthma, allergies, defective clotting gene, limited use of her right

---

[1] Plaintiff asks only that the case be remanded for an award of benefits pursuant to 42 U.S.C. § 405(g). In this instance, however, a reversal and remand for further proceedings, not simply an award of benefits, is appropriate where not all essential factual issues have been resolved. *See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

arm and hand and depression. (TR 11, 102, 110, 140, 143, 144). The Social Security Administration denied benefits. (TR 54, 55, 62-70). Administrative Law Judge Cynthia Bretthauer (ALJ) held a de novo video hearing on February 10, 2009 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because she was not under a disability within the meaning of the Social Security Act at any time from October 16, 2006 through the date of the ALJ's May 26, 2009 decision. (TR 11, 22). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-4). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was forty-seven years old when she applied for disability benefits and supplemental security income. (TR 140). Plaintiff completed the eleventh grade and earned a cosmetology license. (TR 29-30). Plaintiff stopped working after successive hospitalizations for pneumonia, deep vein thrombosis and blood clots. (TR 30). She testified that she cannot work at her prior job as a bus driver because she can walk only 100 yards per day and has limited use of her right hand and arm. (TR 31). She can sit for approximately 30 to 45 minutes and stand for ten minutes. (TR 43). Plaintiff complains of constant pain in the right hand that feels like it is "going through a meat grinder" and pain in her feet that feels like she is "walking on steak knives." (TR 41). Plaintiff soaks her feet, hand and arm in warm water to relieve the pain. (TR 42). Plaintiff can lift about ten pounds with her left arm and five pounds with her right. (TR 43). She testified that she has

2

difficulty holding things with her right hand, she drops things, she cannot pick up coins from a table and she cannot button her shirt with her right hand.  (TR 44).

Plaintiff testified that she could not perform any other job because she is in "excruciating pain" twenty-four hours a day despite taking a "massive amount of narcotics," she cannot sit for hours and she needs to be able to get up, she cannot be exposed to cold, she cannot stand for more than ten minutes, she is heavily medicated and takes a nap after taking her medications, and she sleeps approximately sixteen to eighteen hours per day.  (TR 32).  Plaintiff admitted that she still smokes approximately three cigarettes per day, when she gets "extremely stressed out."  (TR 33). Plaintiff testified that aqua and physical therapy have not been recommended.  (TR 35).  She testified that she has a B12 injection once a month for pernicious anemia and she takes Vicodin, Oxycontin, Lyrica and Tramadol.  (TR 35).  Plaintiff testified that the side effects of her medications are dizziness, drowsiness, trouble concentrating, and swelling in her hands and feet.  (TR 42). Plaintiff testified that she uses a cane which was prescribed by a doctor when she was in the hospital in 2006.  (TR 43).  She continues to use it because she has difficulty getting up from a seated position and walking outside on a surface that is not completely level.  (TR 43).

Plaintiff testified that she has not been hospitalized or gone to the emergency room for any reason since her ear surgery in January 2007.  (TR 39).  Plaintiff has a driver's license and drives less than once a week, typically to go to a doctor's appointment within a few miles of her home. (TR 29).  Her husband and her parents do the housework.  To bathe, her husband helps her into and out of the tub.  (TR 45).  She can dress herself except for shoes and socks, buttons and zippers.  (TR 45).

B.     **Medical Evidence**

3

The Court has reviewed in full the extensive record in this matter. Plaintiff's arguments primarily relate to Plaintiff's allegations of mental impairments, the opinion of Plaintiff's treating physician and psychiatrist and the credibility of Plaintiff's allegations of fatigue and drowsiness. Other than a brief overview of Plaintiff's medical conditions, the Court will focus its discussion on the relevant records as set forth in the analysis, below.

Plaintiff has a history of systemic lupus. (TR 435). Plaintiff's alleged onset date, October 17, 2006, was the date she was admitted to the hospital with complaints of a bluish discoloration of her right hand and foot. (TR 278-322, 315). Plaintiff was diagnosed with significant thrombotic disease involving the upper right extremity including an occlusion of the right radial artery as well as the digital vessels. (TR 278, 315). Plaintiff also has an underlying Factor V Leiden mutation. (TR 437). Plaintiff underwent three days of thrombolysis of the upper right extremity. Steven D. Rimar, M.D., reported that revascularization of Plaintiff's hand and arm was successful and she had required an extensive fasciotomy. Plaintiff had also required removal of a catheter from her left groin which had resulted in infection and wound vac placement. (TR 278, 412, 433). On October 28, 2006, Judith Bateman, M.D., reported that Plaintiff's lupus appeared to be systemically inactive in terms of involvement with other organs. (TR 437). On November 30, 3006 Dr. Rimar noted improvement with both Plaintiff's groin wound and the right hand fingers. In January 2007 Dr. Rimar reported that the groin wound was completely healed. (TR 705).

Prior to her alleged onset date Plaintiff had a perforated septum in October 2001 for which a septal button was inserted. (TR 375). A July 25, 2006 MRI of the cervical spine and thoracic spine revealed "[m]oderate to severe degenerative disk disease in the cervical spine, most prominent from C4-5 to C6-7 levels." (TR 655). Plaintiff was hospitalized on October 6, 2006 for asthma exacerbation with bronchitis. (TR 376-81). Plaintiff was diagnosed with acute asthma with chronic

obstructive pulmonary disease exacerbation with acute bronchitis, sinusitis and cigarette abuse, systemic lupus erythematosus, right upper lobe chronic granulomata and acute-on-chronic rhinitis and sinusitis and sleep disturbance with likely apnea . (TR 384). Throughout the record it is noted that Plaintiff smokes. (TR 380-82, 436, 440, 685). She has been advised to stop smoking by multiple treatment providers. (TR 272-74, 328-29, 384, 563-64).

A May 2007 neurological examination revealed myoclonic movement in the legs only in bed in the evening, likely a result of mild neuropathy with overlay of restless leg syndrome, lumbar spinal stenosis, and peripheral vascular disease in the legs, moderate severe degenerative disc disease in the neck and back, very mild neuropathy, low B-12, and "[s]tatus post multiple blood clots in the limbs due to lupus and factor V deficiency" for which she was taking Coumadin. (TR 657).

In May 2007 Jerold W. Shagrin, M.D., questioned Plaintiff's diagnosis of fibromyalgia and diagnosed chronic pain syndrome instead. (TR 682). In September 2007 Dr. Shagrin noted Plaintiff's report that she had been prescribed Celexa by her psychiatrist and she had been prescribed two Vicodin per day when she needed three per day due to her persistent pain, so Dr. Shagrin prescribed one more per day. (TR 681). In January 2008 Dr. Shagrin reported that it did not appear that Plaintiff's lupus was active at all. (TR 680). On October 7, 2008 Dr. Shagrin diagnosed Plaintiff with systemic lupus erythematosus and chronic pain syndrome. (TR 678). Plaintiff was advised to increase Lyrica and slowly taper off her Neurontin. (TR 678). Plaintiff had recently started taking Valium at bedtime. (TR 678).

The record contains an October 30, 2008 "Adult Treatment Plan Review signed by Alberto Garmo, M.D. (TR 709). Dr. Garmo diagnosed Plaintiff with recurrent episode depression (296.36) in remission and post-traumatic stress disorder (309.81) and assigned a present GAF of 70 and a

GAF of 75 for the prior 12 months. (TR 709). As set forth below, Dr. Garmo treated Plaintiff from 2007 to 2008 while Plaintiff attended therapy with therapist Lynda Brown. (TR 708-72). Plaintiff discontinued therapy on October 30, 2008 due to a change in her insurance; the provider was no longer within the network of her insurance. (TR 712).

### C.    Vocational Expert

The vocational expert (VE) testified that Plaintiff's past work as a cosmetologist was semi-skilled and light work as performed by Plaintiff. (TR 50). Plaintiff's past work as a school bus driver was semi-skilled and light as Plaintiff performed it and as it is basically performed, yet classified as medium work in the Dictionary of Occupational Titles (DOT). (TR 50). The ALJ asked the VE to consider someone limited to light work, able to lift and carry ten pounds frequently and 20 pounds occasionally and limited to occasional stooping, crawling, climbing, crouching and kneeling, and able to only occasionally grasp with the right hand. (TR 50-51). The VE testified that such an individual would be able to perform Plaintiff's past work as a bus driver. (TR 51).

### IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through December 31, 2010, had not engaged in substantial gainful activity since October 16, 2006, the alleged onset date, and suffers from systemic lupus erythematosus (SLE), Sjogren's syndrome, Raynaud's disease, mild polyneuropathy, fibromyalgia versus chronic pain, cervical spine degenerative disc disease with stenosis, cardiac dysrhythmia, chronic sinusitis, Factor V Leiden deficiency, asthma/chronic obstructive pulmonary disease with tobacco abuse and possible myoclonus, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 13-14). The ALJ found that Plaintiff had the residual functional capacity to perform light exertional work further limited to standing and or walking at least six hours of an eight-hour workday, sitting

6

for six to eight hours of an eight-hour workday, occasional stooping, crawling, climbing, crouching and kneeling and occasional use of the right hand for grasping.  (Docket no. 15).  The ALJ found that Plaintiff is able to perform her past relevant work and therefore she is not suffering from a disability under the Social Security Act.  (TR 22).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*,  resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

>    **B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

>    (1)    she was not presently engaged in substantial gainful employment; and

>    (2)    she suffered from a severe impairment; and

>    (3)    the impairment met or was medically equal to a "listed impairment;" or

>    (4)    she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  *See id.* at §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

Plaintiff argues that the ALJ applied the wrong standard at step two in determining whether her depression was a severe impairment, that the ALJ failed to give controlling weight to Dr. Garmo's opinion as a treating physician, that the ALJ's credibility determination is not supported

by substantial evidence where the RFC does not specifically address Plaintiff's complaints of excessive sleeping and drowsiness and that the ALJ's step four determination that Plaintiff could perform her past relevant work as a bus driver is not supported by substantial evidence.

### C.     Analysis

### 1.     Whether the ALJ Applied the Correct Standard When Evaluating Whether Plaintiff's Depression Is A Severe Impairment

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by failing to find that Plaintiff has the severe emotional impairment depression.  Plaintiff argues that the ALJ incorrectly applied the Listing of Impairments and failed to apply 20 C.F.R. § 404.1521.  Under 20 C.F.R. § 404.1521, "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a). "[A]n impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment could not affect the claimant's ability to work." *Salmi v. Sec'ty of Health and Human Servs.*, 774 F.2d 685, 687 (6th Cir. 1985).  In her opinion, the ALJ concluded that Plaintiff's depression "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is, therefore, non-severe." (TR 13). The ALJ then went on to perform an analysis of the four functional areas set forth in 20 C.F.R. §§ 404.1520a and 416.920a for evaluating mental disorders. (TR 14).  The ALJ concluded that Plaintiff has no limitations in activities of daily living and social functioning and has mild limitations in the area of concentration, persistence or pace and specifically noted that Plaintiff has mild limitations in "her ability to understand, remember and carry out detailed instructions." (TR 14).  The ALJ found that Plaintiff has no evidence of episodes of decompensation. (TR 14).

The ALJ properly considered Plaintiff's functioning in her severity evaluation pursuant to

20 C.F.R. §§ 404.1520a and 416.920a which provide that when evaluating the severity of mental impairments, the ALJ "must follow a special technique at each level in the administrative review process," as set forth in 20 C.F.R. § 404.1520a. Defendant correctly points out that 404.1520a(d)(1) provides that "If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe," however, the remainder of that sub-section, which was not cited by Defendant states "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521)."  20 C.F.R. § 404.1520a(d)(1).

The ALJ's findings with relation to Plaintiff's depression are conclusory at best.  "[T]he court may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1080 (E.D. Wisc. 2009) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir.2003)).  The ALJ has failed to provide such a bridge.  Where the ALJ's conclusions with respect to the severity of Plaintiff's depression were made without citation to evidence of record, there is simply no way to determine whether the findings are supported by substantial evidence from the record without this Court weighing the evidence.  Here, the record contains Dr. Garmos' diagnoses of depression and post traumatic stress disorder, which was reported to be improved with medication, yet persistent.  (TR 715-16).  The record is not void of evidence that Plaintiff's mental impairments may have more than a minimal limitation in her ability to perform basic work activities.

The ALJ's opinion contains no discussion showing that the ALJ evaluated Plaintiff's depression at step two in accordance with the factors set forth in 20 C.F.R. § 404.1521, but, rather, leapt ahead to an evaluation of Plaintiff's depression under the requirements for mental disorders

10

in the Listings. *See Arroyo v. Sec'ty of Health and Human Servs.*, 558 F. Supp. 482, 484 (D.C. Puerto Rico 1983) ("the finding that the impairment was not 'severe' should have been guided by the criteria for 'severity' established in the regulations for that stage and not interspersed with factors and requirements from subsequent stages having to do with the vocational considerations and the Appendix' listing of impairments."). The Court should remand the matter for new evaluation at steps two and three regarding Plaintiff's mental impairments, with citations to the evidence of record to support the ALJ's findings.

**2.     Whether the ALJ Gave Proper Weight To The Treating Physician's Opinion That Plaintiff Was Disabled**

Plaintiff argues that the ALJ erred in failing to consider Dr. Garmo's October 29, 2008 statement that, "In my opinion, Patient is disabled from ordinary work activity." (TR 716, Docket no. 10 p. 20). It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e). 416.927(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Therefore, the ALJ did not err in failing to accept Dr. Garmo's conclusory statement that "[i]n my opinion Patient is disabled

11

from ordinary work activity." (TR 716).  Furthermore, there is simply no support for this statement in the record.  On the same report, Dr. Garmo notes that Plaintiff denied memory problems, no concentration problems were noted, thought processes and content were logical, coherent and appropriate, there was no perceptual disturbance, suicidal behavior or homicidal behavior and judgment and insight were adequate.  (TR 716).

The ALJ is required, however, to give the reasons for the weight he assigned to the treating physician's opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ noted that Plaintiff was treated at Henry Ford Medical Centers Behavioral Health Department from June 2007 through October 2008 and the ALJ classified it as conservative management of depression.  The ALJ specifically cited Dr. Garmo's progress notes from March 2008 and October 2008 which noted Plaintiff's report that she had resolution in her depression, with no crying spells and improved motivation, energy and interest, less anxiety overall, and fewer nightmares and flashbacks.  (TR 21, 710, 712-13, 715).  The ALJ's decision shows that she properly considered Dr. Garmo's opinion.

**3.      Whether The ALJ's Credibility Determination Is Supported By Substantial Evidence**

Plaintiff argues that the ALJ did not properly assess her credibility.  Specifically, Plaintiff argues that the ALJ did not explain why she discounted Plaintiff's testimony that she sleeps most of the day and cannot work a forty-hour per week job and did not address Plaintiff's testimony that her medications cause drowsiness.  (Docket no. 10 p. 23).  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters,* 127 F.3d at 531.  Credibility assessments are not insulated from judicial review.  Despite deference due, such a determination must nevertheless be supported by substantial evidence.  *See id.*

An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.  Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  In addition to objective medical evidence, the ALJ must consider all the evidence of record in making her credibility determination.  *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (TR 21).  Contrary to Plaintiff's argument, the ALJ's explanation did not end there.  The ALJ noted that medical records did not show a need for cane and did not record Plaintiff's reports of fatigue.  The ALJ pointed out that physical examinations were relatively normal and no treating physician has recommended limitations to Plaintiff.  (TR 21).  The ALJ considered Plaintiff's treatment and medications when she concluded that Plaintiff's "use of medications does not suggest the presence of impairments more limiting than found in this decision."  (TR 21).  The ALJ's findings with respect to Plaintiff's claimed fatigue are not supported by substantial evidence.  Raina M. Ernstoff, M.D., FAAN, FACP, noted Plaintiff's report in July 2006 of fatigue.  (TR 660).  In April 2007 Dr. Shagrin noted Plaintiff's report of

13

marked fatigue and tiredness.  (TR 683).  In June 2007 and October 2008 Dr. Garmo noted Plaintiff's reports of "fatigue" and "feeling fatigued much of the time." (TR 709, 766).  Plaintiff's testimony that she has dizziness is consistent with her report in July 2006 to that she experienced episodes of vertigo and light-headedness.  (TR 42, 660).

Further, the ALJ did not address Plaintiff's testimony that her medications cause drowsiness. (TR 16, 21).  As Plaintiff points out, the side effect of drowsiness is of particular relevance to the ALJ's finding at step four that Plaintiff can perform her past relevant work as a school bus driver. More than one court has concluded that the failure to consider the side effects of medication on a claimant's ability to perform past relevant work as a light truck driver or bus driver is not harmless error.  *See Peavy v. Astrue*, 2008 WL 3864615 *4 (M.D. Ga. Aug. 13, 2008) (Where records from the plaintiff's doctors documented side effects from the plaintiff's various medications, and the ALJ found that "plaintiff could perform his past relevant work as a light truck driver, and the complained of side effects include dizziness, drowsiness, and impaired balance, this was not a harmless error, and warrants remand."); *Wilder v. Barnhart*, 2004 WL 442603 *3-4 (N.D. Ill. Feb. 27, 2004) (The ALJ found that the plaintiff could return to his prior work as a bus driver and dismissed both the plaintiff's allegations of dizziness as a result of medication and the medications' warnings against driving as "pro forma and standard."  The court found this determination "a bit puzzling."  The court found that it "is a medical determination of whether Wilder is able to drive a CTA bus on this type of medication—a determination for which no doctor, neither the treating physician nor any of the state agency physicians, has evaluated Wilder.");

Plaintiff also argues that her medications Vicodin and Oxycontin are controlled substances. Plaintiff asks the Court to take judicial notice of the fact that these medications cause the side effect of drowsiness.  The Court need not reach this issue, for Plaintiff also argues that to return to work

14

as a bus driver she would need to obtain a commercial driver's license (CDL), a CDL license requires a physical examination and under 49 C.F.R. 382.213 a person under controlled substance is prohibited from operating a commercial vehicle.  The Court finds this argument persuasive in light of *Berry v. Astrue*, 622 F.3d 1228 (9th Cir. 2010).  In *Berry*, the ALJ found that the claimant could perform his past relevant work as a courier driver and concluded that any requirement that couriers be free of prescription pain medication was a mere hiring practice, relevant only to the issue of whether claimant could obtain his past work, not whether he could perform it.  *Id*. at  1232.  The court rejected this reading of the law.  The court noted that if it were true that Berry's "prescribed medication regime to treat his potentially disabling condition would categorically prevent him from obtaining work as a courier by rendering him physically unable to pass a drug test that is mandatory across employers, then he cannot meaningfully be said to be capable of working as a courier." *Berry*, 622 F.3d at 1232 (Noting that "[a]lthough the claimant bears the burden at step four to show he is unable to return to his past relevant work, . . . it was error to fault Berry for failing to meet that burden when he was prevented from presenting relevant evidence because of the ALJ's legal error."); *But cf. Rose v. Astrue*, 2008 WL 4274442 *3 (D.S.D. Sept. 17, 2008) (The court noted that the plaintiff's argument that she could not perform past relevant work as a taxi driver or bus driver due to side effects of pain medication including dizziness and nausea was inconsistent with the record as a whole where the plaintiff testified that she took only pain medication in the evening, the side-effects were reported to be symptoms of dehydration and not medication side-effects and the plaintiff continued to drive throughout the week, up to sixty miles at a time.)

The ALJ's findings with respect to Plaintiff's credibility and the resulting step four findings are not supported by substantial evidence when considering the record in its entirety.

## VI.    CONCLUSION

The ALJ's opinion is not supported by substantial evidence and the Court should remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth herein. Defendant's Motion for Summary Judgment (docket no. 13) should be DENIED, that of Plaintiff (docket no. 10, 14) GRANTED IN PART and the instant case REMANDED pursuant to step four of 42 U.S.C. § 405(g). Specifically, the case must be remanded back to the ALJ so that she may: (1) re-evaluate Plaintiff's mental impairments at steps two and three with citations to the evidence, (2) re-evaluate Plaintiff's credibility and, if necessary, Plaintiff's RFC; and (3) if warranted, conduct a new step-four and a new step-five analysis.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address

16

specifically, and in the same order raised, each issue contained within the objections.


Dated: January 6, 2011          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 6, 2011          s/ Lisa C. Bartlett
                                Case Manager

17